IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY<br>2775 Sanders Road<br>Northbrook, IL 60062-6127<br><br>           Plaintiff;<br>   vs.<br><br>JOHN OBLINSKY & TERESA OBLINSKY, his wife<br>1774 Fairlane Road<br>Summerhill, PA 19355<br><br>           and<br><br>BRANDON FISHER, Administrator of the ESTATE of JACOB FISHER, deceased<br>217 Spring Mountain Road<br>Berlin, PA 15530<br><br>           Defendants. | Civil Action No.  3:23cv302<br><br>Declaratory Judgment |

## COMPLAINT FOR DECLARATORY JUDGMENT

AND NOW, comes the Plaintiff, Allstate Vehicle & Property Insurance Company (hereinafter "Allstate"), by and through its attorneys, Dickie, McCamey & Chilcote, P.C, and J. David Ziegler, Esquire, and files the following in support of its Complaint in Civil Action for Declaratory Judgment:

1.      This is an action for Declaratory Judgment seeking a declaration of the rights and liabilities of the parties under a homeowners insurance policy issued by Allstate Vehicle and Property Insurance Company to John Oblinsky ("John") & Teresa Oblinsky ("Teresa") (collectively "Oblinskys") in relation to a civil action lawsuit captioned, <u>Brandon Fisher,</u>

Administrator of the Estate of Jacob Fisher, deceased v. John Oblinsky and Teresa Oblinsky, his wife, Court of Common Pleas, Cambria County, PA at case no. GD-2023-1246 (hereinafter "the Underlying Lawsuit").

## PARTIES

2.       Allstate Vehicle and Property Insurance Company ("Allstate") is an insurance company incorporated in the State of Illinois, with a principal place of business at 2775 Sanders Road, Northbrook, IL 60062-6127 and duly licensed to conduct business in the Commonwealth of Pennsylvania.

3.       Defendant John Oblinsky is an adult individual who, at all times relevant to the incident averred in this action, owned and/or resided at 1774 Fairlane Road, Summerhill, Pennsylvania 15958-5005 ("the Property") and was, therefore, domiciled in the Commonwealth of Pennsylvania.

4.       Defendant Teresa Oblinsky is an adult individual who, at all times relevant to the incident averred in this action, also owned and/or resided at 1774 Fairlane Road, Summerhill, Pennsylvania 15958-5005 ("the Property") with John Oblinsky, her husband, and is, therefore, also domiciled in the Commonwealth of Pennsylvania.

5.       Defendant Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, who died on April 30, 2021, was duly appointed administrator by the Register of Wills of Somerset County, Pennsylvania, on March 29, 2023, is an individual residing at 217 Spring Mountain Road, Berlin, PA 15530 and is, therefore, domiciled in the Commonwealth of Pennsylvania. At all times material and relevant hereto Brandon Fisher was the father of Jacob Fisher.

## STATEMENT OF JURISDICTION

6.       The amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. Subject matter jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332.

8. This is a Complaint for Declaratory Judgment brought pursuant to 28 U.S.C. § 2201, said declaratory judgment being sought for the purpose of determining a question in actual controversy between the parties, as hereinafter more fully stated.

## HISTORY OF CONTROVERSY

9. At all times relevant, Allstate insured the Oblinskys according to the terms, conditions and exclusions of an Allstate House and Home Policy, policy number 977798880, for the policy period April 23, 2021 through April 23, 2022 ("the HO Policy"). A true and correct copy of the Policy is attached as Exhibit "A" and incorporated by reference.

10. On or about April 30, 2021, Jacob Fisher ("Jacob"), died as the result of being shot by John. A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached as Exhibit "B" and incorporated by reference. See Exhibit "B" at paragraph 12.

11. John admitted to shooting Jacob, and pled guilty to the crime of Voluntary Manslaughter, Unreasonable Belief, 18 Pa. C.S.A. § 2503(b) for the shooting death of Jacob that he caused on or about April 30, 2021. A true and correct copy of the Criminal Docket is attached as Exhibit "C" and incorporated by reference.

12. By pleading guilty, John admitted that he intentionally or knowingly killed Jacob while under the belief that the circumstances were such that, if they existed, would justify the killing. See 18 Pa. C.S.A. § 2503(b).

13. John was sentenced for his crime, and is, according to the Underlying Lawsuit, presently incarcerated at SCI Greene County, Waynesburg, Pennsylvania. See Exhibit "B" at paragraph 4.

14. As a result of the death of Jacob, Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, filed the Civil Complaint in the Underlying Lawsuit against the Oblinskys in the Cambria County Court of Common Pleas. See Exhibit "B."

15. The claims alleged against the Oblinskys in the Underlying Lawsuit arise from the death of Jacob that occurred on or about April 30, 2021 when he was fatally shot by John. See Exhibit "B."

16. Specifically, the Complaint in the Underlying Lawsuit contains the following allegations regarding the incident:

    a. Plaintiff, Brandon Fisher, the father of the decedent, Jacob Fisher, deceased was duly appointed Administrator of the Estate of Jacob Fisher, deceased, by the Register of Wills of Somerset County, Pennsylvania on March 29, 2023 at No. 2023-00171.

    b. Just prior to April 30, 2021, Jacob Fisher moved into his grandparents John and Teresa Oblinsky's house located at 1774 Fairlane Road, Summerhill, Pennsylvania 15958-5005.

    c. At the time, Jacob was struggling with a bipolar disorder, an alcohol propensity, and under medication, all facts of which the Oblinskys were aware.

    d. Jacob's parents and grandparents thought it was best for Jacob to reside at his grandparents' house to alleviate his contact with friends and due to a recent DUI.

    e. The parties had agreed that it would be harmful to allow Jacob to have a car or to allow him to drive the Oblinskys' vehicle because of the aforementioned issues.

   f. Jacob's father, Brandon Fisher, had advised the Oblinskys not to allow Jacob to drive based on that, and other facts to which the Oblinskys agreed.

   g. Unbeknownst to Jacob's father, the Oblinskys purchased a vehicle for him.

   h. On or about April 30, 2021, Jacob used said vehicle to leave the house and then arrived at the Oblinsky residence in an intoxicated condition and went to bed.

   i. Jacob was awoken by the Oblinskys with weapons, i.e. shotgun and knives drawn, ordering Jacob to get up.

   j. An argument ensued between Jacob and John which resulted in a physical altercation between the two. At that time, Teresa hit Jacob physically with a gun.

   k. Jacob proceeded to the door to get his boots on to leave the premises.

   l. As Jacob was exiting the house, John fatally shot him.

See Exhibit "B" at paragraphs 1, 7-15.

  17. John fired his shotgun and specifically struck (and killed) Jacob on or about April 30, 2021. See Exhibit "B" at paragraph 30.

  18. The Complaint in the Underlying Lawsuit alleges that Jacob's killing and resulting damages were caused solely by and were the proximate result of the negligence of the Oblinskys themselves and acting through their agents, servants, workmen and/or employees, acting within the scope of their agency, servitude, workmanship and/or employment. See Exhibit "B" at, *inter alia*, paragraphs 25, 28, 33, 41, 46.

  19. The Complaint in the Underlying Lawsuit contains ten (10) counts, which are captioned as follows: Count I (Wrongful Death vs. John), Count II (Survival Action vs. John), Count III (Negligence vs. John), Count IV (False Imprisonment vs. John), Count V (Assault and Battery vs. John), Count VI (Wrongful Death vs. Teresa), Count VII (Survival Action vs. Teresa),

Count VIII (Negligence vs. Teresa), Count IX (False Imprisonment vs. Teresa), and Count X (Assault and Battery vs. Teresa). See Exhibit "B."

20. Even though Jacob was killed on or about April 30, 2021, and even though John pled guilty to Voluntary Manslaughter, Unreasonable Belief on or about January 27, 2022, the Oblinskys did not notify Allstate of Jacob's death.

21. Rather, Allstate was first notified about Jacob's April 30, 2021 death at the same time it was notified of the Underlying Lawsuit, which was on or about May 23, 2023, almost two (2) years after Jacob was killed. A true and correct copy of the May 23, 2023 fax cover sheet, letter and Complaint is attached hereto as Exhibit "D" and incorporated by reference.

22. The Oblinskys requested a defense and indemnification under the Policy issued by Allstate to the allegations asserted by the plaintiff in the Underlying Lawsuit.

23. On or about June 29, 2023, Allstate sent a Reservation of Rights letter to the Oblinskys. A true and correct copy of the reservation of rights letter is attached as Exhibit "E" and incorporated by reference.

24. Pursuant to the Policy, Allstate retained counsel to represent the Oblinskys with regard to the claims as pled by the plaintiff in the Underlying Lawsuit.

25. Allstate files this Declaratory Judgment Action seeking a Court determination of the rights and liabilities of the above named parties with regard to Allstate's Policy issued to defendants herein, the Oblinskys, and the Underlying Lawsuit.

## COUNT I – No "Occurrence"

26. The averments contained in the preceding paragraphs of this Complaint are incorporated herein by reference as if the same were more fully set forth at length.

27. The Policy contains the following provisions:

6

> *Section II – Family Liability and Guest Medical Protection*
>
> *Family Liability Protection – Coverage X*
>
> *Losses We Cover Under Coverage X:*
> Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.
>
> **We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

<u>See</u> Exhibit "A" at pdf p. 46.

    28.    The Policy contains the following definitions:

        1. **Bodily Injury** – means physical harm to the body, including sickness or disease, and resulting death…
\*\*\*

        4. **Dwelling** – means the single-family **building structure** identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

        5. **Insured person(s)** – means **you** and, if a resident of **your** household:
          a) any relative; and
          b) any person under the age of 21 in **your** care.

\*\*\*

        6. **Insured premises –** means:
          a) the **residence premises**; and
          b) under **Section II** only:
             1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes

        premises, structures and ground **you** acquire for **your** use as a private residence while this policy is in effect;

2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;

…

4) land owned by or rented to an **insured person** where a single-family **dwelling** is being built as that person's residence;

5) any premises used by an insured person in connection with the **residence premises**; and

6) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

7. **Occurrence** – means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

8. **Property Damage** – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

\*\*\*

12. **We**, **us**, or **our** – means the company named on the Policy Declarations.

\*\*\*

14. **You** or **your** – means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

<u>See</u> Exhibit "A" at pdf pp. 27-28.

    29.    The claims set forth in the Complaint filed by the plaintiff in the Underlying Lawsuit are not an "occurrence" as defined in the Policy. Therefore, there is no coverage under said Policy for the plaintiff's claims against the Oblinskys in the Underlying Lawsuit.

    30.    John did not carry a shotgun by accident.

    31.    John did not load the shotgun with ammunition by accident.

32. John did not point the barrel of the loaded shotgun at Jacob by accident.

33. John did not pull the trigger of his loaded shotgun by accident.

34. John's actions – firing his shotgun and specifically striking, and thereby killing, Jacob – while under the belief that the circumstances were such that, if they existed, would justify the killing, was not an accident, and thus do not qualify as an "occurrence" due to the lack of fortuity.

WHEREFORE, Plaintiff, Allstate Vehicle and Property Insurance Company, respectfully requests that this Honorable Court issue an Order declaring that Allstate Vehicle and Property Insurance Company does not have a duty to defend or indemnify Defendants John Oblinsky and Teresa Oblinsky, his wife, under Allstate House and Home Policy, policy no. 977798880, for the claims asserted by Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, in the complaint filed in the Court of Common Pleas, Cambria County, PA at case no. GD-2023-1246 and authorizing Allstate's selected counsel to withdraw his/her appearance on behalf of defendants John Oblinsky and Teresa Oblinsky, his wife, in the aforementioned action upon Praecipe filed.

## COUNT II – Criminal Act Exclusion

35. The averments contained in the preceding paragraphs of this Complaint are incorporated herein by reference as if the same were more fully set forth at length.

36. The Policy contains the following exclusion:

> 1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
>
>    a) such **insured person** lacks the mental capacity to govern his or her conduct;
>    b) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

9

      c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether such **insured person** is actually charged with, or convicted of, a crime.

<u>See</u> Exhibit "A" at pdf pp. 46-47.

    37.    The Policy also contains a "Joint Obligations" Clause:

The terms of this policy impose joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

This policy imposes joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

<u>See</u> Exhibit "A" at pdf p. 28.

    38.    As quoted above, the Policy contains a "criminal act" exclusion that bars coverage for injuries "which may reasonably be expected to result from, the intentional or *criminal acts* or omissions of, any **insured person.**" This exclusion applies even if the insured person lacks mental capacity, a different injury or degree of injury occurs than that initially intended or reasonably expected, or the injury occurs to a different person than initially intended or reasonably expected. The exclusion also applies regardless of whether or not the insured person is charged with or convicted of a crime.

    39.    The criminal act exclusion applies even though the plaintiff calls various counts "Negligence" in the Underlying Lawsuit and alleges that Jacob's death was caused by the Oblinskys' "negligence and carelessness" in, *inter alia*, John's purported failure to warn Jacob of his plans to fire; Teresa's failure to warn Jacob of John's imminent aggressive impulses; and, the Oblinskys' failure to obtain emotional and mental health treatment for themselves and for Jacob,

when in the exercise of reasonable care, it would be apparent that the aggressive thoughts that gave rise to the incident were indicative of mental health or disorder. See Exhibit "B" at paragraphs 25 and 37.

40. John's acts were criminal: John pled guilty to the crime of Voluntary Manslaughter, Unreasonable Belief, 18 Pa. C.S.A. § 2503(b).

41. Jacob's death was caused by John's criminal act.

42. Jacob's bodily injuries and death were reasonably expected to result from John's criminal acts of, *inter alia*, pointing the barrel of a loaded shotgun at Jacob, and then pulling the trigger.

43. The criminal act exclusion applies even if John did not intend Jacob's bodily injuries or death. See Exhibit "A" at pdf pp. 46-47.

44. The criminal act exclusion in Allstate's Policy applies to intentional *and* unintentional crimes.

45. The criminal act exclusion precludes coverage for *all* claims, including those purportedly based on theories of negligence, because they arise out of the *criminal* act that resulted in Jacob's death.

46. There is no coverage for John, and there is no coverage for Teresa either.

47. Where an insurance policy specifically excludes coverage for a loss resulting from the criminal or intentional acts of "any" or "an" insured, as opposed to "the" insured, the insureds' obligations under the policy are joint and the prohibited acts of one insured bar all others from coverage. General Accident Ins. Co. v. Allen, 708 A.2d 828, 832 (Pa. Super. Ct. 1998); McAllister v. Millville Mut. Ins. Co., 640 A.2d 1283, 1288 (Pa. Super. Ct. 1993). See also Michael Carbone Inc. v. General Accident Ins. Co., 937 F. Supp. 413, 422 (E.D. Pa. 1996) ("the bulk of the courts

which have addressed the issue have held that an exclusion worded 'any insured' unambiguously expresses a contractual intent to create joint obligations and preclude coverage to innocent co-insureds").

48. The Joint Obligations clause in the Insuring Agreement means that the responsibilities, acts and failures to act of one person defined as an insured person, will be binding upon another person defined as an insured person. Allstate Ins. Co. v. Kenney, No. Civ.A. 02–CV–02387, 2003 WL 22316776 (E.D. Pa. Oct. 8, 2003) (internal citations omitted).

49. As a result of the criminal act exclusion, and the Joint Obligations Clause, there is no coverage for Teresa, who was a named insured under the Policy, as a result of the bodily injury caused by the criminal acts of John, another named insured under the Policy.

50. Teresa's alleged negligent failure to intervene and stop John is not an act separate from the killing of Jacob, and is not a separate covered occurrence either such that it would avoid the criminal acts exclusion and the Joint Obligations Clause.

51. Accordingly, the criminal act exclusion in the Policy precludes coverage for both John and Teresa for the claims set forth in the Complaint filed in the Underlying Lawsuit.

WHEREFORE, Plaintiff, Allstate Vehicle and Property Insurance Company, respectfully requests that this Honorable Court issue an Order declaring that Allstate Vehicle and Property Insurance Company does not have a duty to defend or indemnify Defendants John Oblinsky and Teresa Oblinsky, his wife, under Allstate House and Home Policy, policy no. 977798880, for the claims asserted by Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, in the complaint filed in the Court of Common Pleas, Cambria County, PA at case no. GD-2023-1246 and authorizing Allstate's selected counsel to withdraw his/her appearance on behalf of defendants John Oblinsky and Teresa Oblinsky, his wife, in the aforementioned action upon Praecipe filed.

## COUNT III – Intentional Act Exclusion

52. The averments contained in the preceding paragraphs of this Complaint are incorporated herein by reference as if the same were more fully set forth at length.

53. The elements of the crime to which John pled guilty, Voluntary Manslaughter, Unreasonable Belief, 18 Pa. C.S.A. § 2503(b) are:

> **§ 2503. Voluntary manslaughter.**
>
> …
>
> **(b) Unreasonable belief killing justifiable.--**A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.

54. Voluntary Manslaughter is a specific intent crime.

55. Bodily injury is the presumed intention of specific intent crimes.

56. John's guilty plea is binding in other proceedings, including this one.

57. As a matter of law, Jacob's bodily injury was the intended result of John's actions.

58. If not the intended result, Jacob's bodily injury (death) was at the very least reasonably expected to result from John's intentional actions.

59. The exclusion applies, however, even if the bodily injury is of a different kind or degree than intended or reasonably expected. See Exhibit "B" at pdf pp. 46-47.

60. There is no coverage for John, and there is no coverage for Teresa either.

61. As a result of the intentional act exclusion, and the Joint Obligations Clause, there is no coverage for Teresa, who was a named insured under the Policy, as a result of the bodily injury caused by the intentional acts of John, another named insured under the Policy.

62. Accordingly, the intentional act exclusion in the Policy precludes coverage for both John and Teresa for the claims set forth in the Complaint filed in the Underlying Lawsuit.

WHEREFORE, Plaintiff, Allstate Vehicle and Property Insurance Company, respectfully requests that this Honorable Court issue an Order declaring that Allstate Vehicle and Property Insurance Company does not have a duty to defend or indemnify Defendants John Oblinsky and Teresa Oblinsky, his wife, under Allstate House and Home Policy, policy no. 977798880, for the claims asserted by Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, in the complaint filed in the Court of Common Pleas, Cambria County, PA at case no. GD-2023-1246 and authorizing Allstate's selected counsel to withdraw his/her appearance on behalf of defendants John Oblinsky and Teresa Oblinsky, his wife, in the aforementioned action upon Praecipe filed.

## COUNT IV – Insured Person Family Exclusion

63. The averments contained in the preceding paragraphs of this Complaint are incorporated herein by reference as if the same were more fully set forth at length.

64. The Policy contains the following provisions:

> 2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

See Exhibit "A" at pdf p. 47.

65. At all times material and relevant hereto, Jacob was the Oblinskys' grandchild. See Exhibit "B" at paragraph 7.

66. At all times material and relevant hereto, Jacob was living with his grandparents at 1774 Fairlane Road, Summerhill, Pennsylvania 15958-5005. See Exhibit "B" at paragraph 7.

67. Upon information and belief, and at all times material hereto, Brandon Fisher had a Restraining Order, Protection from Abuse Order, or some other similar order against Jacob which prohibited Jacob from living with Brandon.

68. Included within the definition of insured persons under the Policy are "relatives" who are residents of your household. See Exhibit "A" at pdf p. 27.

69. As their grandson, Jacob was the Oblinskys' relative.

70. At the time of his death, Jacob was a resident of the Oblinskys' household.

71. At all times relevant, Jacob met the definition of "insured person" under the Policy.

72. The exclusion for bodily injury to an insured person, cited above, precludes any benefit of coverage that would accrue directly or indirectly to Jacob, who was an "insured person" at the time of his death, as a result of his own bodily injury.

73. Pursuant to the exclusion for bodily injury to an insured person referred to above, the claims of the plaintiff in the Underlying Lawsuit against the Oblinskys, as set forth in the Complaint, are excluded from coverage under the Policy.

WHEREFORE, Plaintiff, Allstate Vehicle and Property Insurance Company, respectfully requests that this Honorable Court issue an Order declaring that Allstate Vehicle and Property Insurance Company does not have a duty to defend or indemnify Defendants John Oblinsky and Teresa Oblinsky, his wife, under Allstate House and Home Policy, policy no. 977798880, for the claims asserted by Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, in the complaint filed in the Court of Common Pleas, Cambria County, PA at case no. GD-2023-1246 and authorizing Allstate's selected counsel to withdraw his/her appearance on behalf of defendants John Oblinsky and Teresa Oblinsky, his wife, in the aforementioned action upon Praecipe filed.

## COUNT V – Violation of Policy Conditions

74. The averments contained in the preceding paragraphs of this Complaint are incorporated herein by reference as if the same were more fully set forth at length.

75. The Policy contains the following provisions:

> *Section II Conditions*
> 1. **What You Must Do After A Loss**
>
>    In the event of **bodily injury** or **property damage**, **you** must do the following:
>    a) Promptly notify **us** or **our** agent stating:
>
>    1) **your** name and policy number;
>    2) the date, the place and the circumstances of the loss;
>    3) the name and address of anyone who might have a claim against an **insured person**;
>    4) the name and address of any witness.
>    b) Promptly send **us** any legal papers relating to the accident.
>    c) At **our** request, an **insured person** will:
>    1) Cooperate with us and assist **us** in any matter concerning a claim or suit;

See Exhibit "A" at pdf pp. 26.

76. Jacob was killed on or about April 30, 2021.

77. On or about January 27, 2022, John pled guilty to Voluntary Manslaughter, Unreasonable Belief, 18 Pa. C.S.A. § 2503(b) for the shooting death of Jacob.

78. Allstate was first notified about Jacob's April 30, 2021 death at the same time it was notified of the Underlying Lawsuit against the Oblinskys, which was on or about May 23, 2023.

79. The Oblinskys knew, or should have known, about the potential for a claim against them arising from Jacob's injury/injuries/death immediately after his death on or about April 30, 2021.

80. The Oblinskys knew, or should have known, about the potential for a claim against them arising from Jacob's injury/injuries/death when John was arrested and charged with the crimes arising from the April 30, 2021 shooting death.

81. The Oblinskys knew, or should have known, about the potential for a claim against them arising from Jacob's injury/injuries/death when John pled guilty to the crime of causing Jacob's April 30, 2021 death.

82. The Oblinskys violated the Policy conditions above by failing to promptly notify Allstate of the claims to the prejudice of Allstate and, therefore, the Oblinskys are not entitled to coverage under the Policy for the claims made in the Underlying Lawsuit.

WHEREFORE, Plaintiff, Allstate Vehicle and Property Insurance Company, respectfully requests that this Honorable Court issue an Order declaring that Allstate Vehicle and Property Insurance Company does not have a duty to defend or indemnify Defendants John Oblinsky and Teresa Oblinsky, his wife, under Allstate House and Home Policy, policy no. 977798880, for the claims asserted by Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, in the complaint filed in the Court of Common Pleas, Cambria County, PA at case no. GD-2023-1246 and authorizing Allstate's selected counsel to withdraw his/her appearance on behalf of defendants John Oblinsky and Teresa Oblinsky, his wife, in the aforementioned action upon Praecipe filed.

### COUNT VI – Punitive Damages

83. The averments contained in the preceding paragraphs of this Complaint are incorporated herein by reference as if the same were more fully set forth at length.

84. Plaintiff in the Underlying Lawsuit alleges that the Oblinskys were "reckless," a term of art that frequently refers to a claim for punitive damages.

85. Punitive damages are not "bodily injury" or "property damage".

86. There is no coverage for punitive damages under the Policy.

WHEREFORE, Plaintiff, Allstate Vehicle and Property Insurance Company, respectfully requests that this Honorable Court issue an Order declaring that Allstate Vehicle and Property Insurance Company does not have a duty to defend or indemnify Defendants John Oblinsky and Teresa Oblinsky, his wife, under Allstate House and Home Policy, policy no. 977798880, for the claims asserted by Brandon Fisher, Administrator of the Estate of Jacob Fisher, deceased, in the complaint filed in the Court of Common Pleas, Cambria County, PA at case no. GD-2023-1246 and authorizing Allstate's selected counsel to withdraw his/her appearance on behalf of defendants John Oblinsky and Teresa Oblinsky, his wife, in the aforementioned action upon Praecipe filed.

    Respectfully submitted

    DICKIE, McCAMEY & CHILCOTE, P.C.

    By: /s/ J. David Ziegler
        J. David Ziegler, Esq.
        Pa. I.D. No. 92882

    Two PPG Place, Suite 400
    Pittsburgh, PA 15222
    (412) 281-7272
    dziegler@dmclaw.com

Dated: December 11, 2023

## CERTIFICATE OF SERVICE

I, J. David Ziegler, Esquire, hereby certify that true and correct copies of the foregoing Complaint for Declaratory Judgment have been served this 11th day of December, 2023, via U.S. Postal Service.

***Via Certified Mail, Return Receipt Requested***
John and Teresa Oblinsky
1774 Fairlane Road
Summerhill, PA 19355

***Via First Class Mail and Electronic Mail***
Walter J. Nalducci, Esquire
3300 Grant Building
310 Grant Street
Pittsburgh, PA 15219
wnalducci@cnlawfirm.net
*Counsel for Defendant,*
Brandon Fisher, Administrator of the
Estate of Jacob Fisher

                                                DICKIE, McCAMEY & CHILCOTE, P.C.

                                                By /s/ J. David Ziegler
                                                     J. David Ziegler, Esquire

                                                Attorneys for Plaintiff